Mr. Gebhardt, are you ready? Yes, Your Honor. I'm Lawrence Gebhardt on behalf of the appellant Bethany Boardwalk. The principles of Maryland contract law require that Everest provide full coverage for all damage to the roof of the Bethany Boardwalk Ocean Suites Hotel. To begin, under Maryland law as elsewhere and as recognized by the Fourth Circuit, insurance policies are contracts of adhesion. Stated in a very early case by the Maryland Court of Appeals, insurance companies for this reason have an affirmative duty to make their coverage clear, precise, and understandable, especially with reference to exclusions. If an insurance company does not do so, any reasonable interpretation of the insured controls the extent of coverage. Again, it's got to be reasonable, but then it controls. Exclusions are strictly construed in favor of coverage, and exceptions, on the other hand, are liberally construed in terms of overriding the exclusion. The focus of this dispute is on the extent and application of the construction defect exclusion that did not contain an anti-concurrent cause provision and was limited by an ensuing loss exception and the concurrent cause of loss doctrine or the efficient proximate cause doctrines. Now, clearly construction defects were excluded, but the ensuing loss provision said that in the event one of the exclusions, the construction defect exclusion, results or is basically is followed by a covered cause of loss, which is any loss that damages the property, then we will provide coverage for that loss, for that damage. That is in no way restricted. It's entirely unlimited. When they say cause damage, they don't say other than the construction defect itself. They don't say that the cause has to be the efficient proximate cause or the main cause or has to be unrelated and separate from the construction defect. It just says any ensuing covered cause of loss, meaning damage, and certainly a 39-and-a-half-mile-an-hour wind event is that. Everest put an anti-concurrent clause provision in a different section of exclusions in its policy. The policy contained three sets of exclusions, section B1, which contained an anti-concurrent clause provision that said if any of these exclusions occur and some other covered cause of the damage happens, no matter what the sequence, no matter what the proximity, no matter how remote the excluded cause is, there is no coverage under this policy. That's the B1 exclusion with the benefit. Counsel, can I ask you just a question about this? So that provision is in the exclusion itself, and that makes sense to me. I mean, it seems like all of the cases dealing with the concurrent whatever it is, concurrent causation. Thank you. Doctrine are talking about application of the exclusion in the first instance, but this case, at least as I understand it and as the district court understood it, is not about the scope of the exclusion. Everybody agrees this is excluded unless it is saved by the ensuing loss provision. And so isn't the ensuing loss provision sort of itself, its own kind of textual provision for how we deal with overlapping causes? Like it's either covered by this clause or it's not. You don't need a concurrent loss provision. Well, I would tend to agree with you, but what do you do when you get basically two causes that you can't fully separate? The concurrent cause of loss doctrine says if two events result in a loss, one of which is excluded and one of which is covered, then we give full coverage to it. But you're not arguing, right? I mean, at least I don't believe you preserved an argument that the exclusion here should not have applied at all because this loss was caused concurrently by both a storm, which was covered, and a defect, which was not. The exclusion applies, and we're just arguing about the ensuing loss provision. But the exclusion is completely overridden, and all of the damage to the roof is covered because you can't separate out something attributable only to the layer of polyiso boards, and they're being loose. The wind blew the roof off the building. This is a different situation from what happened, for instance, in the Selective Way Insurance Company where a pipe leaked in the Towson University when it was being built, and water damaged the majority of the building. But the leak itself was separate and distinct. You could go in there, and you could say, here, we'll fix the leak. It's going to cost $50, but there's a million dollars of damage that resulted from it. You can't do that here because the roof was blown off. Defective construction and non-defective construction, the whole thing left. So what we're saying is I believe, and we principally argued, the ensuing cause of loss restores the coverage, fully restores the coverage, and we argue that in the district court. After the district court issued its decision, the 8th Circuit came out in 2020 in the Henderson case with a case directly on point where a defectively constructed roof blew off, and the 8th Circuit said there's an ensuing cause of loss provision and the concurrent cause of loss doctrine, unite, and the entirety of the roof. And all they asked for was a new roof, just like Bethany Boardwalk. The 4th Circuit, in a case which we noted under Rule 28J, has basically aligned itself with the Henderson case issued by the 8th Circuit. The provisions and the holdings basically- The law here is Maryland law. Well, of course, but Maryland law fully aligns with- Not the Maryland High Court. No, but the law in Maryland fully aligns with it. For instance, the two early cases, McCoy and Maddox- You throw out an idea here that we ought to be certifying to the Maryland Court of Appeals. Well, if this is a unique argument, if this is a unique principle that's not- You initiated this lawsuit in the federal court. Yes, and I didn't ask for certification. Well, you didn't ask for certification, which you do now on appeal. What's in your brief right here? Your Honor, I- Page 24. The district court said this is a unique issue that's not been covered. I'm talking about your brief to our court. Yes, I said if this court concurs that it's a unique issue- You started this in the federal court system. Oh, yeah, because I believe- You could have started it in the state court system, and you didn't. I believe- You started in the federal court system, and you're sort of stuck with us trying to guess if we have to. Judge Rollins decided on it, and she ruled against you. The McEvoy and the Dorsey cases, one in 1890 and one in 1909, established principles that control the interpretation because those decisions were published, were there, and provided what we believe was binding precedent. They were cited by Judge Hollander. We did not believe that the certification statute requirement of there being no controlling authority was satisfied, so we didn't ask for it. On appeal, we said, well, if you agree that there's no controlling Maryland decisions, then certify it to the Court of Appeals. But I think if you read our brief closely, we say we believe there is controlling precedent. So you don't want us to certify? No. Okay. I want you to decide under Maryland law as enunciated by the McEvoy and the Dorsey decisions. There, they had exclusions for hurricanes in the one case, for fire in another. They said hurricanes in the one, explosions in the other. They said, but if a fire ensues, then we cover the damage. They cover everything that the fire burned. The only thing that was excluded was something that the fire didn't touch. We're saying here the wind blew that roof off, and you can't separate it out. The district court recognized that you couldn't separate or segregate the exclusions in this case because they were interrelated. The construction defect exclusion, if you look at it and decide what is it really intended to cover, we get a roof built. The roof leaks, okay? It doesn't do any damage. We see a puddle of water underneath. Wipe it up. But somebody's got to fix the roof. The insurance company does not have to fix that. That's excluded by the construction defect exclusion. But what happens when the water damages other things, but it's still separate from the leak? Then you can say, well, we only fix what the water damaged. But what happens when you get a big windstorm that blows it all off? Suppose we had a 200-mile-per-hour windstorm. Blow off anything, but there's a construction defect in the roof. Do we get no coverage because there was a construction defect, even though the 200-mile-per-hour wind would have blown everything off, even from the most perfectly constructed roof? The Eighth Circuit has said no. And this circuit, although in an unreported decision in the Park Center case, basically said the same thing. You had an ensuing loss provision. You had no anti-concurrent cause provision. You had Hurricane Floyd exposing new construction to the elements. And you had an exclusion for freezing temperatures. The freezing temperatures burst pipes. And this court said because there's no anti-concurrent cause provision, because there's an ensuing loss provision, and because Hurricane Floyd is really what caused things, just like the 39-and-a-half-mile-per-hour windstorm here, then there is coverage. And let me emphasize, too, about this windstorm and the construction defect. I'm sorry. Just so that I understand sort of the factual predicate, I thought it was sort of undisputed here that but for the defect in the roof, this roof is not blowing off. It's not like it was a 200-mile-per-hour wind that would have blown off even a perfectly constructed roof. That's correct. The two combined to do it, which is why the anti-concurrent. 39-mile-per-hour wind. 39.6, 39.6 miles per hour. But for the defect, this roof wasn't blowing off. And so I guess the question that the district court, I think, kind of thought it had in front of it was that if you're going to get the roof replaced, what work is that exclusion doing in a case like this? None, right? Well, again, the ensuing loss and the concurrent cause of loss doctrine covered. Let me explain to the court also, though, two windstorms had higher velocities. They didn't affect the roof. There were several. If you look in the applied engineering report where they detailed all the windstorms, there were several that were almost that high. But the roof didn't affect the roof. The roof didn't leak. No one had an idea that there was anything wrong with the roof. So are you disputing now that the defect in the roof, is it your position that in fact the defect in the roof had nothing to do with the fact that it blew off? It contributed, but there was something about that windstorm, its velocity, where it came from, how it struck the roof, that was unique. It was a separate, subsequent, unrelated, distinguishable. Is this a matter of text? What I really get hung up on on this is just how an ensuing loss clause could cover a new roof itself. Because just in terms of the language, it covers damages that result from the defect. The defect has to result in the physical damage. And the roof itself is the defect. It's not the result of the defect. It's the defect. Right. But the word result, result if you read it in the dictionary, can mean proceeds, comes after. Oh, you think it just means comes after. Comes after. Remember, what does ensuing mean? Ensuing means follows. Result, they're using the word Everest in its policy, although not Everest. But the roof itself doesn't come after the defect in the roof. The damage from the roof blowing off does. But the roof is the defect. That's what I keep getting hung up on. The wind is what caused the damage. The wind happened after the defect first was put in place. It ensued. But the roof is the defect. And so what you can get coverage for under this provision is for damages that are caused by a defect. But how can you? It just seems like what you. No, no, no, Your Honor. It says you get coverage for a covered cause of loss, which the policy says is any physical damage that is not excluded by a different exclusion in the policy. But where the defect results in the covered cause of loss. And it just seems like here the defect is itself the covered cause of loss. Because as you say, the covered cause of loss is the direct physical loss. They seem like they're the same thing. Like this is not a derivative loss or a one-step remove loss. It's all the same thing. Everest used the word result instead of ensued. Many policies use the word ensued. That's why it's called ensuing loss. It's talking about something, an event that happens after the defect was created that results in the damage that we're asking. You're saying basically the defect is covered. We can get the defect fixed if something happens after. It destroys, makes it so you can't separate the cost of repairing the defect from the cost, from the overall cost. That's what I'm saying. Remember, the entirety of the roof was not defective. You had a concrete base. You had a poly iso boards that were laid down. Some of them weren't glued correctly. And then you had a TPO membrane that was correctly applied. Only one-third of the construction was at all defective. But the whole roof was blown off. You couldn't fix it without replacing the TPO roof. And so that was what the resulting cause. So I think my time is up, Your Honors. Unless you have a question, I will reserve for rebuttal. Thank you, Mr. Giffard. Mr. Jenkins? Peter Jenkins with Jackson & Campbell for Everest Security Insurance Company. I think I'd like to start actually with that 200-mile-an-hour hypothetical because it helps illustrate how some of these confusing causation concepts work. If we have a defective roof and a 200-mile-an-hour wind blows off that roof, and even a perfectly sound roof would have been blown off by that wind, the policyholder is going to seek coverage. And in some cases, an insurance company might say, but wait, there was a defect. But in practical terms, the defect did not cause any of that damage. And courts will read into policies that don't specify otherwise something called the efficient proximate cause rule. It's talked about. Other names are used as well. But the idea is, what is the predominating cause? What is the direct cause? What actually caused the damage here? And even though a defective roof is blown off by a monumental wind that any roof would have succumbed to, it's not fair to say that the defective construction was the cause of that loss, and therefore the insurance company can't rely on the exclusion to disclaim coverage, absent other language. Now, there's also something called the anti-concurrent cause qualification, which insurers will put in if they want to be sure that even in a circumstance like that, they can still deny coverage if there's a defect in any way, shape, or form. But that's not simply a binary choice, though, between an exclusion will never apply unless you have an anti-concurrent cause provision. Policies use different types of language to talk about different causal relationships. Some exclusions, the parties will put the anti-concurrent cause exclusion. Some, they'll put an ensuing loss exception to say there's some causal relationships we're willing to cover here. And sometimes the policy doesn't address it at all, and what you find most commonly in the national case law is that a court will read in some kind of efficient proximate cause requirement then, whether in the insuring agreement or the exclusion, to say there needs to be at least a real cause here for the insuring agreement to apply in the first place or for the exclusionary language to kick it back out of coverage. Can I just stop you because you said something that was very helpful to me. So an anti-concurrent cause provision and an ensuing loss provision are sort of two different ways you might deal with the same cluster of issues. Correct. Okay, thank you. And you see that in the case law, I believe, one of the Maryland cases. Right. It talks about you use an anti-concurrent clause provision to contract out of the efficient proximate cause rule. An ensuing loss clause is somewhere in between. Gotcha, thank you. And this contract uses both in different places. Correct. Okay. And as you get the sense from reading the cases, this is language that is, there are different forms of language with the same concepts, but there's a lot of standard language that gets used a lot, and so you will see cases throughout the country quoting similar or identical language and courts interpreting it. So second thing that I just want to touch on briefly, he says the construction defect exclusion is really only designed to prevent the insurance company from having to pay to repair undamaged defective work. But the problem with that interpretation of the policy is that the policy in the first place only covers direct physical loss or damage. And so if we have undamaged but defective work, the policy ensuring agreement doesn't trigger in the first place. And we cite several cases in our brief for that point, including, I think, the Port Authority case out of the Second Circuit. I think there was at the Third Circuit. There's two or three cases we cite for that point, but the point being courts that have looked at this universally agree that the exclusion isn't even necessary in that circumstance because the defective work that is undamaged would not be covered in the first place. So that can't be the explanation of why the exclusion is in the policy. And counsel also says the exclusion really just means that comes after, as long as there's a loss after the defective construction. But again, as we point out in our brief, these policies are sold to cover existing buildings, and they're always going to be whatever damage we're talking about is always going to be after construction is over. This isn't a builder's risk policy. This is a first-party property policy on a building. And as counsel also pointed out, this is an all-risk policy where if it's not excluded, it's covered. And the cases nationally that have looked at this issue, generally the courts will point out that a creative lawyer  and say this was a covered cause of loss, whether it's wind, whether it's rain, whether it's the force of gravity or the force of atmospheric pressure or the humid air or so on. Essentially, recharacterizing the construction defect loss as having been caused in part by something else doesn't meaningfully or proves too much because in literally every case, the lawyer would be able to point to something and say, see, there's a covered loss in the picture here, and therefore I should get coverage. And once again, the exclusion would then never in any real-world circumstances be applied, which can't possibly have been the party's intent. All of that said, the key fact here, as Judge Harris pointed out, is that the parties agreed below that none of the damage would have happened had the roof been properly constructed. And therefore, from there, it's a very short step to conclude that the exclusion textually applies and that all of the damages that Bethany was seeking below are excluded from coverage unless the ensuing loss clause saves it somehow. And that's what Bethany largely argued below was it based its arguments on the ensuing loss clause. And the specific language of the clause is important because different insurance policies use different language to get at the same concepts. And respectfully, I disagree with counsel. The fact that our language does not use the word ensues is in fact significant, and you can't just say that because some other policy somewhere used the word ensues, any ensuing loss clause must be interpreted as the court interpreted that policy. Maryland starts with the language of the policy before it. And this language says, we will not pay for loss or damage caused by resulting from faulty or defective workmanship, but if defective work results in a covered cause of loss, we will pay for the loss or damage caused by that covered cause of loss. In other words, you need a new covered cause of loss that was caused by the excluded cause of loss. In the prototypical example, the 1906 earthquake in San Francisco, the earthquake knocks over buildings but also starts fires. Those fires go on to burn still more buildings. The insurance company with an ensuing loss clause can't say, but this fire was started by an earthquake, and earthquakes are excluded, so no coverage, because the ensuing loss clause gives back coverage for the fire, which is itself a new cause of loss. But here we don't have anything like that. The construction defect did not cause winds to blow and did not bring into existence some new separate thing that caused problems. Your colleague responds that it is true that the provision says the excluded cause of loss, the defect, has to result in a covered cause of loss. And so what you say makes sense, except that the way covered cause of loss is defined is not in terms of causes. It's not a list of causes. It just says it's a direct physical loss. So how do I make sense of that? It appears to say, once you build in the definition, that this ensuing loss clause will apply if the defect results in direct physical loss, which it did here. But it does say caused by, I think is the first response, which implies you need something more than just direct physical loss. But to the extent your question is asking why is the policy written that way, going somewhat off script, but my understanding from my reading of 100 years of insurance history, picked up here and there, is that the forms evolved over time and where forms used to do specific causes of loss, it became much more common to do the all-risk approach of if we had an excluded, we cover it all. But that seems like a real problem for this argument because, as you say, it's the language of the contract that governs. And this just says, if a defect, I'm putting defect in brackets for excluded cause of loss, results in a direct physical loss, we will pay for the loss or damage caused by that direct physical loss. I don't know what to tell you there. But the language, what you are saying makes perfect sense and it makes sense of the old earthquake cases and everything, but I'm just not sure it tracks this language. But you don't need this argument to prevail. The district court didn't think it prevailed on that ground. The district court didn't address this argument, right? You raised it, but the district court didn't address it. We raised it, but I don't believe the district court directly addressed it. The district court didn't say that construction defect didn't cause the earthquake. The district court said, I read this to mean that there needs to be a cause, but then it dropped the issue and we're not sure why. And I suppose I should say there are certainly things we disagree with in the district court opinion, but we think this court has several possible grounds to affirm and it doesn't need to necessarily get into the weeds because, I think what you were alluding to, if we step away from the specific language and just say ensuing loss clause is generally in the context of construction defects, what we see is there's the majority approach and the minority approach in the cases throughout the nation. And the majority approach, or I think this court has actually called it the consensus approach, is that there needs to be a loss to something other, something separate from the sort of loss that we would expect the defective work to have caused if we knew that it was defective before the incident occurred. Some new and intervening, intervening might be too strong a word, but something somewhat different. When you build a roof and you leave holes in it, you know the roof is going to leak. If you build a foundation and you don't shore it up properly, you know the building is probably going to collapse or have a similar problem. Similarly, so when you have a run-of-the-mill construction defect case where what happens is exactly what you expect to happen, that doesn't satisfy an ensuing loss clause under the majority approach. And we cite plenty of cases in our brief for that. This court's Taja and Trafco cases under Virginia law. We've got the Balfour case in the Fifth Circuit, the Friedberg case in the Eighth Circuit applying Minnesota law, the TMW case in the Sixth Circuit, the Rocky Mountain pre-stress case in the Tenth Circuit, all kind of canvassing that law and agreeing that this is the majority approach. There's also a handful of minority rule courts, and I think the simplest way to summarize what they do is to say, they say the defective work itself can't possibly be covered or the exclusion would have no meaning, but anything else is. And so if you build a roof with a hole in it and rain gets through the roof and damages the carpet, that's happened in this case. That's the one-step-removed case, right? Yeah, it has to be one step removed from the defect itself, and then we'll cover it. But that damage is covered, even though we would expect a leaky roof to cause water damage to the interior. And which view does Maryland apply? The Maryland Court of Appeals has not specifically addressed the issue. Which one do you sponsor? We sponsor the majority approach, which we think makes the most sense of the policy language. Your colleague sponsors the minority approach. I don't believe so. He can speak for himself, but as I understood his argument below, he argued for a third approach, which is that the exclusion simply doesn't apply, ever. He doesn't think the damage has to be one step removed. Right. As I understood Bethany's arguments below in his court, they logically boil down to a position that this exclusion is never enforceable and is simply the parties put it in the policy just to waste paper and ink. And what did Judge Hollander adopt, your view? Judge Hollander adopted the minority view, which was not what we had argued for, and then ordered the parties to conduct additional discovery, because the facts in this case were that there was, Bethany pleaded damage to the roof, damage to one hotel room, where there was water infiltration that I believe damaged drywall and carpet, and damage to a hotel restaurant, to the restaurant roof in the hotel. The parties conducted discovery, and those other two categories of damage that Judge Hollander held would be covered under the minority rule, which she predicted Maryland would adopt, were less than the deductible that applied on the policy. I thought Judge Hollander, she did anticipate that the Maryland courts on this policy would adopt the minority approach, but didn't she also think it didn't matter, because either way you're not getting... I thought she thought it didn't matter. She did say something to the effect that it doesn't matter, because she thought the result would be the same under either approach. And that gets it... Oh, I remember. Sorry. It's coming. Right. But put that to one side. As it turns out, though, post-discovery, it is clear it doesn't matter, because under either approach, they're not replacing the roof. It's, at best, all the derivative damages, and the derivative damages are coming in under the deductible. So what Judge Hollander didn't know at first is that, at the end of the day, under either of these approaches, the result is the same. That's correct. Got it. Thank you. Sorry, I forgot the posture. Just to put a capstone on that, our position certainly is that we think Maryland would adopt the majority rule, but this court does not need to decide that question. This court can simply say the district court's judgment is affirmed, because under either view, Bethany takes nothing. So turning from that, in this court, although not really below, Bethany has also raised the concurrent cause rule, which is a somewhat separate doctrine of law, and it goes back to before the exclusion even applies, again, as Judge Harris alluded to. Under a concurrent cause analysis for a court that had followed that approach, the court might say, we don't even apply the exclusion in the first place because there's a covered cause lurking here. Now, that approach, frankly, doesn't make sense in the context of an all-risk property policy, because there will always be a covered cause in any fact pattern. But to better understand why it doesn't apply here, it's helpful to look at the history. The concurrent cause rule was something invented in California in the Partridge case in the early 70s, where the California court was looking at a general liability policy that had an auto exclusion, and held that even though the injury arose out of the use of an auto, there would still be liability coverage because there was a covered negligence cause in the equation. California later clarified in the Garvey case that this rule only applies in the third-party context, the liability policy context, and it does not apply in the first-party property policy context like we have here. But even more interestingly, Maryland, in the Aragona case and later in the EDP Flores case, the Maryland Court of Appeals said that we don't even use it in the third-party context. That's not the law in Maryland. In Maryland, we begin and end with the policy language. So what Bethany has essentially asked this court to do here on appeal is to predict that Maryland would apply the concurrent cause of loss doctrine in a first-party case, even though California, the state that invented it, doesn't do so, and even though Maryland has rejected that doctrine in the very context that California originally adopted it. Indeed, on the same almost identical fact pattern of a general liability policy with an auto exclusion in the EDP Flores case. And respectfully, we simply don't see how this court could take that giant leap and predict that Maryland would do such a thing. The other, I think, crux of Bethany's argument is to rely on the Dorsey and the Mankiewicz cases, and it may be helpful to just briefly talk through those to understand why they don't help Bethany. The Dorsey case is an 1881 case in which a sulfuric acid warehouse is somehow destroyed by some combination of tornado, explosion, and fire. And before video cameras, there's a lot of different witness statements. It's not really clear, I think, to the court on appeal or to anyone other than the jury exactly what the sequence of events was. But the trial court instructed the jury and says the trial court erred in how it instructed the jury, and it makes two points in the course of doing so. First, it says if there is a fire that is completely destroying the building and in the course of that fire an explosion happens, even though explosion damage is covered, or is excluded, sorry, the insurer can't say there's no coverage for damage because the entire building was a total loss already because of the fire. The second hypothetical that draws on the other end of the spectrum is to say, but there is an exclusion for explosion damage unless caused by fire, and let's take the hypothetical of someone strikes a match causing a little flame and that flame detonates a keg of gunpowder or some other similar explosive thing and completely destroys the building. The court of appeals says it doesn't make any sense to say that is a loss caused by fire within the meaning of this exclusion. But because the jury could have concluded that that was what the court meant, the jury instructions were wrong and the court sent it back. And what this is is essentially a form of the efficient proximate cause rule in which the court is saying there needs to be a meaningful causal relationship between the covered conduct, the fire, and the result of damage. That's all that Dorsey stands for. It doesn't say that if there is a covered cause of loss and an excluded cause of loss, we ignore the exclusion and apply it. McEvoy is also not particularly helpful to Bethany. That's a case that is about some ensuing loss clauses and some policies that were issued on buildings in San Francisco. It's kind of an omnibus case where I believe it was an insurer had gone insolvent and there was a dispute about large categories of claims. And the real dispute in the case is essentially, should this complicated 19th century language be read as an ensuing loss clause or does it mean something else? The court doesn't really explain what the arguments were, but it says we reject the insurer's arguments and say the plain meaning of this language is that there is an ensuing loss clause and therefore fire caused by the earthquake on your premises, fire caused by the earthquake off your premises, or even fires that couldn't be put out because the earthquake had destroyed the city water mains, all of that's covered under the ensuing loss clause. Which is all well and good if we were talking about a case where we had a separate independent cause of loss such as a fire, but that's not this case. Again, there's nothing in these facts that particularly is helpful to Bethany. I can briefly then jump to the, I think that that essentially covers the main issues as to why the exclusion applies and the exception does not. But there were two other issues below where Bethany also said that the district court abused its discretion in denying a motion to reconsider and let it essentially have a do-over on the liability phase of the case and try and prove that Everest was liable for part of the roof. And the district court quite properly said under the applicable standards that there was no need to do that. Bethany had had a chance to brief the case, it chose to brief the case as if the entire roof was damaged and that it could get recovered for the entire roof and it even admits in its reply brief here that that was a conscious choice. It didn't want to weaken what it thought was its main argument. It doesn't point to any new evidence. It doesn't point to any new law. It doesn't point to any clear error, which are the three standards on which the court could reconsider. And as this court said in Carlson, when the motion is merely a vessel for the very evidence that was initially lacking in opposition to summary judgment, the district court quite properly denies reconsideration. Mr. Jenkins, are you saying that the result here doesn't apply or override the exclusion unless the defect is the progenitor of the loss? Otherwise, are you saying that the defect itself has to be the progenitor of the damage or the loss? Is that your argument? I'm not sure I'm entirely following. I think our argument is... I thought you were saying that, well, you said the defect itself has to be the thing that caused the loss. Well, the exclusion... And the storm just comes along, but that's independent of the defect, and you define result meaning it has to be the actual, you know, progenitor. I mean, that becomes the germ which caused the loss, and there's no intervening other thing. Is that your position? So I'm getting a little hung up because for the exclusion to apply in the first place, that whatever damage we're talking about would have to be caused by or resulting from the faultier defective workmanship. But then for the exception... Well, it's the workmanship. The workmanship is what makes it excluded, right? Correct. Right? But that exclusion is overwritten if that defect or non-covered cause results in some damage, right? Causes a new cause of loss to come into being. Right. That's what I'm saying. That's what I mean by the progenitor. It itself causes it. That's what... Correct. That's your narrow reading of that. That's a very narrow reading, right? You agree that's a narrow reading? I don't know that I would agree that's a narrow reading. I think where our argument is that it's the plain... For example, under that reading, a storm of any magnitude would never cause, would never be the result. I know here they can see that that 40 wouldn't be enough, but if it was enough, it wouldn't matter because that defect didn't cause the storm. Is that right? Yes and no. So if your question is, if a 200-mile-an-hour hurricane had blown the roof off completely, I think our position would be unless we can somehow prove that the roof would have withstood that, a properly constructed roof, then the exclusion wouldn't apply to begin with because the exclusion only applies to loss or damage caused by or resulting from faulty or defective workmanship. So there needs to be a causal relationship between the defective work and the damage. But here it's undisputed that the roof would have withstood, a properly constructed roof would have withstood a storm up to 55 miles an hour or, in fact, any number of such storms for the entire useful life of the roof. So under the approximate cause, you say there was no result then. If you take the causation definition of result, right, there was none. In the facts here or in the hypothetical? In the facts here. In the facts here? There was no result. Based on the one it has to be the progenitor, am I right? Yeah, there's no new cause of damage. It's simply the wind attacks the roof in a way that we would... The roof failed in exactly the way we would expect the roof to fail if we had known that the roof had that damage or had been improperly constructed in the first place. No one who understood this... It's almost like heads I win, tail you lose, isn't it? I mean, there really is almost... There is no way to overcome the original exclusion, but it seems to suggest that there is. I would not agree with that. There's several examples in the case law. So one example in the case law... Give me an example here. Certainly. Detectively installed wiring causes a fire to occur. Let's try roof since that's this case. Give me your hypothetical where it would... Sure. Well, I'll slightly modify one from the case law. If Bethany had discovered the roof defect and had to close down the hotel to fix the roof defect, and while the hotel was closed down, the vandal broke in and caused property damage, that would be a separate and intervening new cause of loss. It had been caused by the construction defect because the hotel would not have been vacant if not for the construction defect, but it would be a new cause of loss that the ensuing loss exception would restore coverage for. Oh, so is that... Because I thought before the district court you were taking sort of a more maximalist position, I would call it, which the district court rejected based on the language of this policy, which was that if the damage, the vandalism, has any causal relation to the defect, the bad roof, then you can't recover under the ensuing loss clause, that there has to be an independent cause of loss, meaning that cause of loss, the vandalism, would have happened with or without the roof defect. I thought the district court thought that was your position, and the district court said you can't square that with the language of this policy. Do you know what I mean? If I'm following you, I think it would be an overstatement of our position because I don't think we've ever... Our position is every term in this policy has a use, and there are situations... As to these facts, I thought your position, your opening position, basically, was, look, you need an intervening cause, the storm, that independently caused the damages in question, the 200-mile-an-hour storm. But here, because the damage is causally related not only to the storm but also to the defect, but for the defect, there would not have been damage, that's why it doesn't come in under the ensuing loss clause. That was not your position? So I'm getting a little hung up on the use of the word independent. Me too, because I think people use that in different ways, but I thought you were using it to mean the other cause of loss, the non-defect cause of loss, has to account for the entire loss by itself. I don't believe that's how we use it in the district court. I'd have to look, but I think by independent, we just mean a cause that is arising, a new cause that was not necessarily set in motion by the construction defect, but that acts to cause the damage in concert with the construction defect. So a vandal comes along, or a fire gets started, would be examples of independent in that sense. They're still connected. And to quickly put a pin on that, if we had wanted that sort of maximalist approach you were talking about, that would be where insurers use the anti-concurrent cause clause to get that result. But that wasn't, I believe, our position below. And I believe my time has expired if I'm reading this right, so unless there are other questions. Thank you. Thank you. Your Honor, Everest argued in its brief that the construction defect had to cause the windstorm. Our response in the reply brief was, that's an absurd construction, and Maryland law says you avoid absurd constructions of contract language. Now, what is the construction defect to cause? Everest has argued just now that you don't even need the construction exclusion because construction defects wouldn't be covered. Remember, this is an all-risk policy. If the contractor was negligent in building the roof and the roof was leaking, it doesn't cause any damage, just a leak. The cost to fix that damage resulting from the contractor's negligence would be covered. Suppose you have the standard policy like this and someone negligently drops a cigarette on the floor and a fire starts and burns down the building. That negligence would be a cause of action. That's why they have to have the construction exclusion provision in there. Now, you must ask yourself, as Judge Hollander did, why is there not an anti-concurrent cause provision attached to the construction defect exclusion? The B-1 exclusions in the policy say, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. If that had accompanied the construction defect exclusion, there would never have been a claim made to Evers. But they didn't put it in. And under Maryland law, they had an obligation to make that policy clear. Why with the ensuing clause provision didn't they say results in a covered cause of action? Why didn't they say, provided that any damage attributable to the construction defect is not covered? Or why didn't they say, provided there is no other cause that's related? They could have clearly expressed this, but they didn't, and when they did it, they violated the long-standing law that was clearly established in the McAvoy case in the 1890s. The concurrent cause of loss doctrine originated in a California case in the Intermediate Appellate Court. California thereafter enacted a statute saying the efficient proximate cause is what's going to control. So the California Supreme Court reversed that. But other states in the Eighth Circuit, and frankly, this circuit in the Bob Park decision, rejected that. The Florida Supreme Court applies the concurrent cause of loss doctrine. The Iowa Supreme Court, the North Carolina Supreme Court, the Tennessee Supreme Court, the Missouri Intermediate Court. If the concurrent cause of loss doctrine doesn't apply, however, what is applied is the efficient cause of... the efficient proximate cause of loss doctrine. The concurrent cause is a substitute. The efficient proximate cause basically is what is the event that puts in play the sequence of events? Here, it's the wind. It's the thing that caused all the damage. It's the starting point. Some cases, and frankly, an early Maryland Court of Appeals case said, you look at what's the dominant cause as well as what's the precipitating cause that does this. Here, it's the wind. We would have never known of any of this stuff if that windstorm had not hit. Now, you don't typically... The two cases that were cited saying the efficient proximate cause doesn't apply were liability cases. You don't use tort rules in Maryland law to interpret contracts. That's what those two cases say. There's no case that's ever rejected the concurrent cause of loss doctrine in Maryland. One final point. After the judge issued the ruling and said the roof is defective, remember, we just moved for summary judgment on liability. We didn't ask for reconsideration of her ruling. We asked for clarification. Wasn't it called a motion for reconsideration? We did because that's what the rule says. We cited two federal district court cases. You wanted her to come out differently. No, we wanted her to say, define what you mean by the damage. Is it the damage only to the component or is it the damage to the entirety? Because we now have to... She found for us. And it was a question of proving damages. When we prove damages, do we prove what it costs to replace the properly constructed TPO membrane and only exclude the cost of the polyisoboards or is everything out? That's what we wanted when we got into the damages phase. Tell us what we have to prove. I didn't ask her to change her ruling. We appealed that. I just said, tell us what you mean by damage. Is it damage only to the defective component or is it everything? If you had a light switch or a fuse and cost $2 to replace, it blows out the entire electrical system in the building which was properly constructed. Is the $2 fuse what's excluded or is the million-dollar electrical system excluded? That's what we asked for clarification of. And if you look, we had it as an alternative argument for the damages phase of the case. Judge, tell us what we should prove. And we submitted the affidavit to the contractor saying the costs to do the two things are different, not because we were saying change your ruling, but tell us what we need to prove when we move to the damages phase. And that's what did not happen there. So I think if I'm looking at this correctly, my time has expired, so unless the court has further questions on this metaphysical argument... One of the things that helped me, just to clarify this, one of the problems that seemed to be the district court was looking at, assuming the analysis of the concurring costs, and as you said, they're using that, that because when you look at that, the concurring cause, when you balance it, it's only on the side of the defect, meaning that if it was the windstorm, but because once you agree that the winds are not the cause, that would be the concurring one that you could use to perhaps overcome the exclusion, but because here that it is the defect that is the cause, you don't... Didn't that cast a lot of account of what the district court was doing? Your Honor, and very candidly, we didn't, because the Henderson case came out after the district court issued its decision, we didn't strongly argue concurrent cause to the district court, but the concurrent cause of loss doctrine says if two or more causes result in damage, and one is not remote or just speculative, then one is covered and one is not covered, there's full coverage. That's the concurrent cause of loss doctrine. I thought the concurrent cause of loss doctrine said under those circumstances, the exclusion doesn't apply. Right, exactly. The exclusion doesn't apply. You weren't arguing that the exclusion doesn't apply, or at least you didn't argue that in front of the district court, and so we're past that point. Now your only hope is the ensuing loss clause, and that seems to me to be something different, like these concurrent loss provisions appear in the exclusion. I just don't know a case that applies the concurrent causation doctrine, I'm sorry, to an ensuing loss clause. Those are two different ways of thinking about overlapping causes, and this contract picks an ensuing loss clause. The Henderson case in the Eighth Circuit, the Sebo case. Yeah, it's not clear to me that they're not talking about the exclusion. I know that they refer to the ensuing loss clause, but they seem to be really saying the exclusion doesn't apply. Henderson had a construction defect exclusion, the wind blew the... I know, and I think that court held that exclusion doesn't apply under the concurrent causation doctrine. I... Right, but you, it is too late, I believe, for you to start arguing that the exclusion doesn't apply. The only thing in front of us is the ensuing loss provision. Well, Your Honor, this is a de novo review, and even if we did not fully and comprehensively argue concurrent cause of loss doctrine in the district court, it's a matter of law, and you certainly have the right to consider... I don't think you argued in front of the district court that the exclusion doesn't apply, and if you didn't argue that in front of the district court, you can't argue it here now. Well, we said the ensuing cause of loss doctrine overrides it. Right, but those are two different things, and it matters because your concurrent causation doctrine really only works with respect to the exclusion, and I think that is an argument that it is too late for you to make. The ensuing cause of loss doctrine joins arms with the concurrent cause of loss doctrine. They unite. When you read those articles of talking about ensuing losses, they, basically, they say the same thing that I'm saying. It overrides it. And Judge Hollander certainly pointed out that there was no anti-concurrent cause of loss doctrine in the Everest policy. They don't explain why not. Thank you. Thank you. Thank you, both counsel. Again, our normal fashion to come down and greet you, which we certainly miss doing that. We can't do that, but know very much that we appreciate your arguments, and thank you for being here, and be safe and stay well.
judges: Roger L. Gregory, Robert B. King, Pamela A. Harris